# IN THE COURT OF APPEALS OF IOWA

No. 19-1958
Filed March 4, 2020

**IN THE INTEREST OF R.H.,**
**Minor Child,**

**L.N., Mother,**
    Appellant,

**J.H., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Jasper County, Steven J. Holwerda, District Associate Judge.

A mother and father separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Deborah L. Johnson of Deborah L. Johnson Law Office, P.C., Altoona, for appellant mother.

T.J. Hier of Hier Law Office, P.C. (until withdrawal), Baxter, and Larry Pettigrew, Ankeny, for appellant father.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Dusty Clements of Clements Law & Mediation, Newton, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Greer and Ahlers, JJ.

**BOWER, Chief Judge.**

A mother and father separately appeal the juvenile court decision terminating their parental rights to their child. Each contends the State failed to prove the grounds for termination by clear and convincing evidence. The father contends termination of his parental rights is not in the best interests of the child. Both parents ask for an additional six months to achieve reunification. We affirm on both appeals.

### I. Background Facts & Proceedings

L.N., mother, and J.H., father, are the parents of R.H., born in January 2019. At the time of birth, the mother tested positive for methamphetamine, amphetamines, and ecstasy. The father was incarcerated on a drug offense.

The child was removed from the mother's care the day after birth. The child exhibited signs of withdrawal in the days following birth. Upon discharge from the hospital ten days later, the child was placed in foster care.

On March 5, the child was adjudicated a child in need of assistance (CINA). The court ordered the mother and father to submit to drug screens and participate in substance-abuse and mental-health evaluations and recommended treatment.

The mother has three older children who reside with the maternal grandparents. Her rights to the two oldest children were terminated in 2008 and 2011, and she voluntarily placed her third child with her parents. R.H. has visits at the maternal grandparents with the mother's other three children once a month. The mother often participates in the monthly visit. The paternal grandparents and aunt visit the child at the foster family's home.

The mother did not cooperate with services throughout the case. She rarely responded to phone calls, text messages, or emails from the department of human services (DHS) or service workers to discuss the child, drug tests, or services. The mother did not obtain a mental-health evaluation or treatment. She obtained a substance-abuse evaluation on October 9 but had not followed through with treatment at the time of the termination hearing three weeks later. She did not have housing or employment throughout the case. She visited with the child during sibling visitation at her mother's home, but, though offered, did not pursue any additional individual visits with the child.

The father began visitation with the child once a week in April and expected to move to a work-release facility or his mother's house in May or June. In May, J.H. was arrested for an offense committed while working in the community on work release, which extended his incarceration. His visitation was suspended following the new offense. In August, the father's visits resumed. In late August, he was transferred to a different correctional facility and did not inform DHS. His visitation was suspended again and had not resumed by the time of the termination hearing. The father participated in a parenting class through the department of corrections, and the department determined he did not need a substance-abuse evaluation or treatment.

On October 31, the court held a permanency and termination hearing. The mother did not attend the hearing. The court heard testimony from the social worker and the father. Each parent requested an additional six months to achieve reunification. On November 8, the court terminated the mother's rights under Iowa Code section 232.116(1) (2019) paragraphs "b" (abandonment), "d" (child or

sibling adjudicated CINA after abuse or neglect), "e" (failure to maintain significant and meaningful contact), "g" (parental rights terminated as to another child from the same family), "h" (child is unable to return to the parent at present time), and "i" (abuse or neglect posing significant risk or imminent danger to child). The father's rights were terminated under paragraphs "e" and "h."

Each parent separately appeals.

## II. Standard of Review

We review termination-of-parental-rights cases de novo. *In re M.D.*, 921 N.W.2d 229, 232 (Iowa 2018). "There must be clear and convincing evidence of the grounds for termination of parental rights." *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). The paramount concern in termination proceedings is the best interests of the child. *M.D.*, 921 N.W.2d at 232.

## III. Analysis

**A. Grounds for termination.** Each parent contends the State has not proved the grounds for termination by clear and convincing evidence. "On appeal, we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).

As already noted, the mother's rights were terminated under Iowa Code section 232.116(1)(b), (d), (e), (g), (h), and (i). The mother claims on each ground "the State has not met its burden on each and every element." We need only discuss paragraph "e." To terminate under this paragraph, the court must find:

> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(2) The child has been removed from the physical custody of the child's parents for a period of at least six consecutive months.

(3) There is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so. For the purposes of this subparagraph, "significant and meaningful contact" includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent. This affirmative duty, in addition to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and requires that the parents establish and maintain a place of importance in the child's life.

Iowa Code § 232.116(1)(e).

The child was adjudicated CINA on March 5 and had been removed from January through the termination hearing in October, a period of more than nine months. Thus, the first two elements were met. *See id.* § 232.116(1)(e)(1)–(2).

We also find the third element has been shown by clear and convincing evidence. The mother only saw the child once a month when the child was on a sibling visit at the maternal grandmother's home and made no effort to participate in additional visitation offered by DHS or the foster family. She provided no financial assistance, did not contact DHS or the foster family for updates on the child, and has not shown a genuine effort to meet her responsibilities in the case permanency plan. She has not established a home, obtained employment, or begun substance-abuse treatment. The mother has not maintained significant and meaningful contact and has made no reasonable efforts to resume care of the child. *See id.* § 232.116(1)(e)(3). Therefore, we affirm termination of the mother's rights under section 232.116(1)(e).

The court terminated the father's rights under Iowa Code section 232.116(1)(e) and (h). The father does not directly contest that the elements of paragraph "h" have been met.[1] Instead, he argues he was precluded from participating in many services due to his incarceration and points out he participated in the programming available to him through the department of corrections.

The father's incarceration at the time of the termination hearing was due to his own actions. He had been having weekly visits with the child and was on the verge of being granted parole and the opportunity to participate in services that might lead to reunification with his child when he committed a new offense. The offense delayed his release by months, resulted in a facility transfer, and interrupted his visitation schedule. At the time of the termination hearing, the father had an uncertain release date and no established home for the child. We conclude the juvenile court properly terminated the father's parental rights under section 232.116(1)(h).

**B. Six-month extension.** At the permanency and termination hearing, each parent requested an additional six months to work toward reunification. For the court to continue placement of the child for an additional six months, the court must enter an order enumerating "specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need

---

[1] Paragraph "h" allows termination of parental rights when a child three years of age or younger has been adjudicated CINA and has been removed from the parents' physical custody for at least six months. Iowa Code § 232.116(1)(h)(1)–(3). The final element is established if there is "clear and convincing evidence that the child cannot be returned to the custody of the child's parents . . . at the present time." *Id.* § 232.116(1)(h)(4).

for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *Id.* § 232.104(2)(b). The juvenile court did not find any reasonable factors or conditions that would allow it to determine the need for removal would not exist in six months—nor do we.

The court noted the mother was not any closer to being self-sufficient and able to parent the child than she had been in January. Specific problems included her lack of mental-health and substance-abuse treatment, lack of housing and reliable transportation, and continued use of illegal drugs.

The court also found it unlikely the father would be able to be reunited with the child within six months. The father faced an uncertain release date, which could be weeks or even months after the hearing. Upon release, the father testified it would take close to six months for him to obtain his own home and steady employment.

"The future can be gleaned from evidence of the parents' past performance and motivations." *In re T.B.*, 604 N.W.2d 660, 662 (Iowa 2000). Neither parent's behavior over the ten months of the case provides us a basis on which to state with confidence the reasons for removal will no longer exist in six months. We affirm the juvenile court's denial of a six-month extension.

**C. Best interests of the child.** The father contends termination of his rights is not in the best interests of the child. In determining whether termination is in the best interests of a child, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2); *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014).

Here, the child is very young and has never been in the care of either parent. The father had just begun visiting with the child and was close to parole when he chose to commit another offense, extending his incarceration several months and interfering with his developing relationship with the child. The date of his release is uncertain and establishing a job and home is expected to take additional months.

Once the State has proved a ground of termination, "we cannot deprive a child of permanency . . . by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010). The child has never been in the father's care and has had only sporadic visitation with him. We find termination is in the child's best interests.

We affirm on both appeals.

**AFFIRMED ON BOTH APPEALS.**